Good morning, Your Honors, and may it please the Court. My name is Marla Goodman, and along with Theo Andelis, I represent Petitioner Amadou Diouf in this matter. I'd like to reserve three minutes for rebuttal. There is no dispute here that Mr. Boulachi, Mr. Diouf's former counsel, failed to file a motion to reopen for over two years, and Mr. Diouf is entitled to a presumption of prejudice under this Court's holdings. Well, just a minute, though. That depends on when the attorney was hired. That's correct. It would depend on when the attorney was hired. But the evidence in the record is clear that Mr. Boulachi was hired following the proceedings in February 2003. But it doesn't show he was hired in time to file a timely motion to reopen. I actually respectfully disagree. I believe the evidence does demonstrate that. Show me where that evidence is. Certainly. At A.R. 47, Mr. Diouf states that he hired Mr. Boulachi to appeal the decision from the immigration judge. An appeal was required within 30 days, which would have put that at March 26, 2003. Furthermore, Mr. Diouf states in a letter to the BIA and in his brief on a motion to reopen at A.R. 8 and A.R. 40, that Mr. Boulachi's counsel was ineffective because he failed to timely file an appeal of the I.J.'s decision. I know he says that, but that still doesn't say when he was hired, does it? It does. At A.R. 41. It assumes it, but it doesn't say it. At A.R. 41, Mr. Diouf states that he hired Mr. Boulachi after his removal proceedings in February 2003. Right. So we know it's after a certain date, but we don't know when that time was. I made this chronology because there's so many dates. Right. And I kept thinking, and I slotted in all those things, but I had the same privilege as Tashima was talking about, and that is it all boils down to when he hired the attorney. Well, at the very least, we know that he was hired before the motion to reopen deadline, because Mr. Diouf has testified that Mr. Boulachi allowed the case to sit for two years. Mr. Boulachi indeed filed the motion to reopen on May 27, 2005. The filing deadline for a motion to reopen was May 27, 2003. Right. That's two years later. That gives a precision to two years that seems to me to be a little odd when you have to – when we're really talking about was he hired before May 27, 2003. And I understand you're saying that you can piece it together. You don't even have any – maybe this is sort of one of the problems, of course. We have these counsels that don't do things right. If we had a regular lawyer who just said, look, he did or didn't hire the lawyer on this date, we wouldn't be having this discussion with you about his poor lawyering. Right. And that is one of the problems here. But it hasn't really challenged that point. I'm sorry. It hasn't challenged that his subsequent lawyer didn't put in the record timing of his lawyer number one. That's right. That's not before the court, but I would maintain it's not necessary. In similar circumstances, this court has granted a slight bit of deference to an alien who is making filings either pro se or up against the system. I refer the court to Sembring or to Oggeman. This is a similar circumstance, but there's plenty of evidence in the record that Mr. Boakye was hired sometime, at least following February 23, 2003, up until right around May 27, 2003. At the very least, he was hired before the voluntary departure period ended, which was in June 24, 2003, and could have counseled his client to leave in a timely fashion, where he wouldn't have sat in detention for two years and five years later be before this court still on immigration issues when he has lived bona fide marriage for five years now to his long-term fiancee, who is a U.S. citizen. Assuming the court is willing to grant the presumption of prejudice, the next step is to find that Mr. Duke was entitled to – that there were plausible grounds for relief. This is a generous standard under the court's Fifth Amendment due process rights. Mr. Duke need only show that he forfeited relief for which he had plausible grounds for success. In other words, that he may have been prejudiced. There are a number of ways that this can be reached. I posture that the easiest ways for the court to find that is that Mr. Boakye could have filed a motion to reopen and supplemented that motion two weeks later when Mr. Duke was indeed married to his long-time fiancee and girlfriend. In Granada, Zosaguerra, it was sufficient for the attorney there to supplement an application to the BIA with proof of a Department of Labor certificate that was granted outside the motion to reopen filing period. This is an even easier case because all that was required here was Mr. Duke to follow through on his marriage. We didn't need a separate third-party government. Do we need to wait? On that point, does it matter whether once you file the motion, your voluntary departure period is, in effect, suspended or told? Do we need to know the answer to that question? No, we only need to show plausible grounds for relief, and that's all that the court asked for here. What if the Supreme Court said in the case pending before them that you can't have, in effect, a suspension or an extension in the voluntary departure period? If the court said that, where would that leave us? I don't think there would be any difference there. All this court is asking is whether there would have been plausible grounds for relief before the BIA. We don't know when the BIA would have decided that or whether Mr. Duke would have. If the law had been different at the time, presumably, we presume Mr. Duke would have left the country, as he should have, if that were the case in the law at the time, but it wasn't. It's not necessary for the court to decide that issue. It's not dependent on it. Furthermore, Mr. Bellacci also could have filed a motion to reopen based on a wedding that took place during the filing period, or counseled Mr. Duke that he couldn't take his case, he couldn't file a motion to reopen, and Mr. Duke had to depart within the departure period. We also have – there's a third step that this court usually goes through on an ineffective assistance of counsel under the Fifth Amendment, and that would be the Lozada requirements. There's evidence in the record that Lozada was complied with, and even if there wasn't, this court has held that Lozada is not sacrosanct in the case of clear and effective assistance of counsel. That's not an issue in this case, is it? The government has not challenged it, Lozada, and the BIA didn't raise it. We believe it's sufficiently briefed. Is he still in detention? He's not in detention at the moment. He was released in 2007, March 2007. He was what? He was released from detention in March 2007. He was released from detention, and then what happened? He's at home pending the decision in this court with his wife and child. In this country? Yes. Okay. That's correct. If the Court has no further questions, I reserve the remainder of my time for rebuttal. Thank you, counsel. Thank you. Good morning. May it please the Court. Lyle Smith on behalf of the Attorney General. We respectfully ask the Court to affirm the Board's decision here. Petitioner Duke overstayed his visa and was convicted of a drug crime in 2003. He's brought into removal proceedings. He conceded removability. What was the drug crime? I believe it was a marijuana possession. It wouldn't be an exclusion-type crime, would it? An exclusion-type? It wouldn't have any effect on his status, would it? As to whether or not he's eligible for adjustment? Correct. That I'm not sure. I don't – that issue is not before the Court, but I – So then it would be irrelevant that he – at this point, that he had a conviction. You're right. It's not really before the Court at this point. I'm just – just to explain the background. But, right, that's correct. He conceded removability and was granted voluntary departure, and he did not depart the United States thereafter. He got married while – after his order of removal became final. His wife filed a visa petition, and I do have to note that we have recently – very recently learned that his I-130 visa petition was denied. And apparently, according to our sources, it was denied because he did not – he and his wife did not appear for their marriage interview. So he does not have – his visa petition has not been approved. It was denied. What do you mean, according to your sources? I mean, is that a fact or a – According to CIS, it's something that we just learned, just very recently learned. When I say we, Judge Reinhardt says we mean you at the DOJ learned it from CIS. That is correct. Let me just lay this out a minute. If we were to determine that he had hired counsel before the time for filing a motion to reopen and the counsel had bollocked the finding and, therefore, it needed to go back to the BIA so that it could be reconsidered, if it went back to be reconsidered, then would you be back in a situation where you'd have to determine whether relief was available? Yes, that would be – obviously, the board would have to consider whether or not there's an effectiveness of counsel, whether or not he was prejudiced. And the petitioner here had filed a motion to reopen for the IJA, and the board then considered the denial of that motion to reopen. And the reason that he would want the reopening would be to have the I-130 petition considered or everything suspended pending the consideration of the I-130? Well, to apply for adjustment of status. And the reason he's seeking adjustment of status is based on his marriage to a United States citizen wife. Right. And she filed the I-130 back in 2003. Correct. Given the fact that it's been denied, and according to, again, CIS, there was no – no appeal of that denial was taken. So it's a final denial. Well, you have more or less a date on when that was denied. It was – yes, I think – I believe it was November 2007. Okay. Well, we have to ask Mr. Hughes' counsel if he actually has notice of that. I mean, it would be a matter of record at this point at CIS, correct? Right. That's correct. I think they've been told us that it's in the file, but the file is right now in transit to the National Records Center. When they say the file, you mean his A file? I believe so, yes. And I realize that it's not part of the record. However, it is relevant because, like, again, if these petitions has been denied, not just pending but denied, I think it's hard to argue that there's a case of controversy here. I don't know. Well, why wouldn't the government file a motion? When did you learn about this? I just learned about this very late last week. And I realize that it's – So are you saying that in your view the case is moot? I believe that there's an argument that there's a mootness argument here because – There's an argument or it is moot? Well, yes. You can have an argument about almost anything. Right. That's true. I think the only reason I'm a little hesitant right now is because we don't have that piece of evidence. Once we do – Let's just assume you had a piece of paper that said denied. Is it plausibly moot or is it moot? Then, yes, I would argue that it is moot because, as far as we know here, the only relief that he's seeking is adjustment of status. That's the whole point of moving to reopen. The whole point of raising the ineffectiveness of the counsel claim is to apply for adjustment of status. And if his piece of petition is denied now, he doesn't have any plausible grounds for relief. And it would not seem – to go any further in this case if the case is moot. There's no case of controversy. Once we do receive the notice that it was denied, we will be more than happy to provide it to the court and move to supplement the record. How much time are you talking about when you say once we receive it? I'm sorry, Your Honor? You say once we receive it. I mean, how much time are you talking about for you to receive it? That I do not know for certain, but I should – I would anticipate checking with CIS if I have to on a daily basis and to make sure we receive it hopefully within the next month. In other words, if we were to ask for, you know, supplemental briefing from both sides on this issue of mootness, how much time would you need, I guess is what I'm getting at. It's difficult for me to say. I understand why the court would want to address this as soon as possible. I would be more comfortable addressing it once we do actually have, in fact, the actual notice. But like I said – Mr. Duff would be in a hurry one way or the other, correct? He would not – Necessarily be in a hurry. To provide that? Well, to address it on an expedited – it doesn't need to be done on an expedited basis, in other words. There's no – Given the fact that he's not in detention, I think that's what you mean, that he's not, right? If he was being detained, then perhaps that would be a more – And he's not at risk of being deported, is that correct? As far as I know, no. I don't think he is at this point. I think – no. Not to my knowledge, at least. In the alternative, though, I would just argue, just going to the merits briefly, that the board correctly affirmed it was proper for the board to affirm the denial of the second motion to reopen here because the board did not – as the board found, Duff did not demonstrate that any alleged and effective assistance to the counsel that he received prejudiced him because, again, he's basing his – he based the motion to reopen on his marriage, which occurred on – I believe it was June 17th, 2003. The motion to reopen deadline, as the board noted, was May 27th, 2003. So it was already after the nine-day period, filing period, had expired. All right. So even if we assume that a judge's counsel, like Mr. Polacci, had filed that motion immediately on the day of the wedding, he would not – he could not demonstrate that. It would still have been untimely. Now, going to the issue of – The argument on that point by your opponent is that a good counsel would have filed it before the wedding and would have reserved it and said that he will be in two weeks. And then supplemented it. Right. Right. And we understand that's the argument they raised, and – Or maybe even tell them to move up the wedding. Right. And as this Court – No, but the other point about counsel is that I think the argument is, well, the counsel also advised him, well, you know, I'll file a motion to reopen so you don't have to depart. You can stay here legally. So it affected his voluntary departure status, you know, which has a penalty in itself, right? What, 10-year eligibility or something like that now? Right. He raised three – he throws three arguments, one being he could have moved the wedding date forward, two he could have just gone ahead and filed it and supplemented it, and three that he advised him if he got married he could stay regardless of the voluntary departure period expiring. Our first argument to that and response to that was that he never exhausted those arguments. He never presented those arguments in his appeal to the Board or in his second motion to reopen. So the Board never had an opportunity in the first instance to address those arguments. And even if we were to assume Newford to liberally construe his appeal and his motion to reopen, even though it was very general in that sense, and he didn't raise those arguments in his declaration either, I should note, but even if we give him benefit of the doubt and construe it liberally, then in this case, as we – as this Board – or as we argued in our – in our brief, his claims rest on proof that he actually hired Mr. Bellacci within that 90-day period. We don't know when he hired Mr. Bellacci. It was after February 2003, after the IJ's original order of ED. But we do not know when. We can only speculate. And the evidence in here certainly does not indicate – he argues that he hired him, I believe, in March. But we don't know – there's nothing in the record to show that. And as we pointed out, some of the evidence in the record actually fairly indicates that he hired Mr. Bellacci in June 2003 at the time of his wedding. But in any case, we just don't know. There's not enough insufficient evidence to show that. Now, if he had hired him in March 2003, then perhaps, maybe, then there would be an argument that there was an infectiousness counsel. So even if we liberally construe the arguments he raised on appeal to the Board, again, we don't have sufficient evidence. And so the Board probably affirmed the IJ's denial of the second motion to reopen. And so we would respectfully ask the Court to affirm the Board's decision. Thank you. Thank you very much. As you can probably imagine, we're a little disturbed to learn about the I-130 being denied. This is not in the record. We're not aware of it. I don't believe my client is aware of it. But furthermore, it's irrelevant. Well, it's something that happened in November, according to the government. In November of 2007, you say your client is still not aware of it? I have no knowledge that my client is aware of it. I certainly follow up on that. But it's irrelevant whether it's been denied now or not. What this Court looks at is whether there were plausible grounds for relief at the time that the ineffective assistance of counsel took place. So what we look at is whether at the time in 2003, in May 2003, when a motion to reopen has been timely filed. That may be true. But isn't it relevant going out to whether the case is now moot? Well, as you suggested, that might be something that's relevant for supplemental briefing. But we don't even have the paper before us. I mean, we have no proof of this, let alone any argument prepared on that issue. I don't believe it would moot it, but I would respect the opportunity to have time to follow up on briefing if that's what the Court would desire. I suppose we could end up with another whole round of issues, such as whether he received the notice, whether he had given them notice of where he was now living. Certainly, which is why it might make sense to remand it to the BIA on the grounds that we've already addressed and let this be decided before the BIA. And if it needs to come back up, come back up on a record of all that. And why he hasn't appealed the denial of the I-130, right? Correct. He didn't get the notice? He didn't get the notice because it went to his lawyer. And it seems like he would have denied it when he had good counsel, right? Correct. I would like to stipulate that he does currently have good counsel. I would also state that— How long have you represented him? I came on in the summer of 2007, fall or summer of 2007. Solely in connection with this appeal? I came in in the middle of the appeal. The opening brief was filed by a colleague, yes. Correct. But it was only in connection with the appeal that you arrived on the scene. That's correct. Yes. Just out of curiosity, this is the fellow who was in another case where he claimed he was drugged and deported? And that wasn't you either? That was not me. That's correct. We've spoken with counsel on that case, but that case is now settled, is my understanding. Yes. I'd further add that I believe this Court was correct when they stated that the drug crime is irrelevant. The criminal conviction below was stipulated for immigration purposes that it was below 30 grams possession of marijuana for individual use, so that's not an issue here. I'd like to just put some other dates before the Court for the hiring issue, the timing issue. I think I mentioned AR-47 and AR-8 and AR-40. At AR-41 is where Mr. Giff discusses Mr. Bocci allowing the case to sit for two years. AR-38, AR-40, and AR-47 recognizes that he was hired specifically to file a motion to reopen. And at AR-48, Mr. Giff recognizes that that deadline was 90 days. And he knew when that was before the BIA, and he was still arguing that he hired Mr. Bocci in a timely fashion. At AR-47, he discussed that he hired him within the voluntary departure period. And at AR-42, he stated that Mr. Bocci failed to file an extension for voluntary departure period. Finally, on the exhaustion issue that the government raised, this has been adequately briefed, I believe. But just to sum up, Mr. Giff raised these issues below in an adequate fashion, especially under Soko, Gonzales, Zang, and Moreno-Mirante. There's enough evidence in the record. But even if there wasn't, under Sagermark, the BIA did decide this case on the merits, and therefore the record before the Court is sufficient for this Court to decide it on the merits as well. Thank you, Your Honor. Thank you. The case is submitted. The next case on the calendar is United States v. Feehander. How did they get to Kristen Gates and Alice in the middle of the brief? Counsel.
judges: Reinhardt, Tashima, McKeown